GRACE REIZENBERGER

*v.*

RICHARD C. SHELTON, JR., et al.

[Decided March 1st, 1916.]

1. Where a woman, desirous of rewarding her secretary's gratuitous services, instructed the vice-president of a bank to buy the house in which the secretary lived for him, which was done, the woman giving the banker the cash to pay for the house, and the latter taking a deed in the secretary's name, which he later sent to her, who had it recorded, and the woman's last will, drawn after the gift of the house, for which $10,000 was paid, reduced the legacy to the secretary of more than $10,000 to

$2,000, there was no resulting trust in the property, when purchased by the banker, in favor of the woman, so that her heirs were entitled to the property as against the secretary, the doctrine of resulting trust being founded upon the presumed intention of the parties, while the woman's conduct showed no intention to create a trust in her own favor.

2. To reward her secretary's gratuitous services, a married woman could, from her separate funds, furnish the purchase-money for a house for such secretary, having the deed taken in his name, and by recording it give him good title, without her husband joining, despite the Married Woman's act (*3 Comp. Stat. 1910 pp. 3222–3238*), providing that nothing in the act should enable any married woman to execute any conveyance of her realty without her husband joining "as heretofore," which did not change her condition relative to an equitable estate.

*Messrs. Smith, Mabon & Herr,* for the complainant.

*Mr. Albert Leuly* and *Mr. Maximilian T. Rosenberg,* for the defendant.

LEWIS, V. C.

The complainant in this case is the daughter of Melissa A. Fonda. She files a bill in this court to have a resulting trust declared in favor of her mother. The property in question is now in the possession of Richard C. Shelton, Jr., one of the defendants. It was the money of Mrs. Fonda that bought this property and the complainant contends that the estate that her mother had in it descended under the residuary clause of the will to her.

Mrs. Fonda died in December, 1914, her husband surviving her. Shelton, the defendant, had been in her employ since the late spring of 1909. He met her first while they were active in the work of the First Reformed Church of West Hoboken. At that time he was employed as a salesman in a wholesale silk house in New York City. She engaged him to act as a secretary for her and it appears from the evidence that for a number of years he practically attended to all her business, such as writing checks and letters, and so forth. He accompanied her as secretary on her trips during the summer and she paid his expenses. His testimony is that he was at her beck and call all the time. In the year 1912 Mrs. Fonda and he had some conversation

with reference to his continuing to work for her and he stated it was necessary for him to seek another position if his health which had been delicate would warrant it. She is said to have told him not to leave her and said that she intended doing something for him. Later she told him that she would buy the house at 111 Shippen street, West Hoboken, for him. Subsequently she discussed the matter with Shelton's mother and made arrangements for the maintenance of the house. These arrangements having been agreed upon the Sheltons removed to the premises at 111 Shippen street. This was about the 10th of May, 1912. Shelton's parents paid rent for the house at the rate of $20 a month for some time, which Shelton turned over to Mrs. Fonda. On the 9th of August, 1912, a deed for the property, 111 Shippen street, was made to George A. Berger, vice-president of the Trust Company of New Jersey. Mr. Berger is executor of Melissa A. Fonda's will and had transacted affairs for her at the bank. His story of the purchase of the property is that Mrs. Fonda told him that she desired to buy the house at 111 Shippen street for Richard Shelton; that the people that owned it thought that she had a lot of money and they wanted more than the house was worth and she therefore desired him to purchase it for Shelton. He says in consequence of his conversation with Mrs. Fonda he entered into communication with the owners of the property and finally bought it for $10,200. Mrs. Fonda gave him the cash to pay for it. Berger entered into a contract with the owners of the property and thereafter took a deed from one Adelaide Ripple for it. This deed was recorded May 3d, 1912. After he had received this deed he says he told Mrs. Fonda about it and she asked him to hold the property until she was ready to have it transferred to Richard Shelton. He received a letter on June 6th, 1912, from Mrs. Fonda, from Albany, New York, directing him to put the deed to Shelton on record. He says he then notified Mrs. Fonda that if she wanted it recorded he would send it to her. He subsequently executed the deed to Shelton and on August 19th, 1912, sent it to Mrs. Fonda, writing her that Mr. J. Rufus Besson had suggested that he mail it to her and that if she wished it recorded before her return from Westport, at which

place she was then stopping, that she could mail it direct to Mr. Besson. Mr. Besson received the deed in due course of time and recorded it. Witnesses were produced to show that Mrs. Fonda had said she had purchased the property for Shelton and the reason she did it was that she had never paid him any salary and she wanted to give him something for his services. It appears also from the evidence that a legacy of $10,000 and furniture and personal property amounting to several thousand dollars more which Mrs. Fonda had given to Shelton was cut down to $2,000 by her last will. It seemed apparent that she had done this owing to the gift of the property to Shelton.

The contention of the complainant is that there is a resulting trust in favor of Melissa A. Fonda. I cannot under any view of the case reach this conclusion. My opinion is that when Berger took title he took it as trustee under an express trust, not for Mrs. Fonda, but for Shelton. If there was any resulting trust in favor of Mrs. Fonda her interest was conveyed to Shelton by the letters of instruction which are all in evidence and which were sent to Mr. George A. Berger. Berger acted upon these instructions. The trust was executed. What Mrs. Fonda did was to pay Shelton for his services that he had rendered and was to render in the future. Her estate was benefited by the step which she took. The legacy and the valuable furniture gifts were cut down to a bequest of $2,000 by her last will. At no time did Mrs. Fonda ever exercise any dominion over the Shelton property. There is nothing in the testimony that indicates that she considered it as her property or that she considered herself as having any interest in it. She simply furnished Berger with the money to hold as her trustee. Berger realized that Shelton was his *cestui que trust.*

Her reasons for negotiating through Berger are quite apparent. It was her desire evidently to arrange it in such a manner as to prevent future complications for Shelton so that he might be undisturbed in his possession of the property.

The doctrine of resulting trust is founded upon the presumed intention of the parties. Certainly there can be no intention spelled out of Mrs. Fonda's conduct in any respect to create a resulting trust in her favor.

It is further contended by the complainant that Mrs. Fonda could not convey any equitable title to the defendant without her husband joining. It is true that in the case of *Cushing* v. *Blake,* cited by counsel for the defendant, it is held that the husband would have an estate by the curtesy in the property held by the wife under an express trust, but in this case Mr. Fonda is not a party nor is his curtesy at all in question. The Married Woman's act did not change her condition where she holds an equitable estate. In safeguarding to married women their separate estates it simply provided that nothing in the act contained should enable any married woman to execute any conveyance of her real estate, and so forth, without her husband joining *as heretofore.*

I do not find any basis in the decisions of this state for this latter claim of the complainant. In the case of *Leaycraft* v. *Hedden, 4 N. J. Eq. 512,* the chancellor said:

"I think it may safely be said that a *feme covert* is a *feme sole* as to her separate estate, so far as to dispose of it in any way, not inconsistent with the terms of the instrument under which she holds. Any danger apprehended from such rule can be avoided by words restraining the disposition, or directing the precise mode in which it may be made."

I will advise a decree dismissing the bill.